J.C. HUTCH, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–92–01222–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

July 14, 1994.

Frances M. Northcutt, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Alan Curry, Jane Waters, Asst. Dist. Attys., Harris County, for appellee.

Before DUGGAN, O'CONNOR and HEDGES, JJ.

### OPINION

HEDGES, Justice.

At the conclusion of a jury trial at which appellant, J.C. Hutch, was found guilty of possession of a controlled substance, cocaine, weighing less than 28 grams, the trial court assessed punishment at 40–years confinement. In two points of error, appellant attacks the jury charge and asserts that trial counsel rendered ineffective assistance. We affirm.

On September 2, 1992, police officers Kwiatkowski and Zavala stopped a vehicle in which appellant was the front seat passenger. The officers testified they stopped the car because neither appellant nor the driver of the car was wearing a seat belt. Appellant denied that he was not wearing his seat belt. The officers also testified that one of the car's taillights was not operating. While Officer Kwiatkowski was questioning the driver, Officer Zavala observed the back seat passenger place a crack pipe in her bra area. Officer Zavala testified that he saw appellant throw a white, rock-like substance onto the floorboard in plain view. Appellant stepped out of the car at the officer's request and submitted to a pat down search. Officer Zavala then recovered the substance that appellant allegedly had thrown onto the floorboard. The substance field tested positive for cocaine.

A hearing was held on appellant's motion to suppress the cocaine. The trial court deferred the issue to allow the jury to decide whether the police had reasonable suspicion or probable cause to stop the vehicle in which appellant was a passenger. The jury heard testimony from both officers and from appellant regarding whether appellant and the driver were wearing seat belts.

### Jury Charge Error

In point of error one, appellant contends that the charge given to the jury was not a correct statement of the law. He did not object to the charge at trial.

Ordinarily, appellant must object to the jury charge in order to preserve his complaint for appellate review. If appellant properly preserves the error, any harm can provide the basis for a reversal. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (op. on reh'g); *Turner v. State,* 721 S.W.2d 909, 912 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd). If appellant fails to properly object, however, he must show that the error is *fundamental* in order to obtain reversal. *Almanza,* 686 S.W.2d at 171; *Turner,* 721 S.W.2d at 912. Error is fundamental if it so egregiously harms appellant that he is deprived of a fair and impartial trial. *Almanza,* 686 S.W.2d at 171; *Turner,* 721 S.W.2d at 912. We determine whether harm has occurred by looking to the alleged jury charge error and measuring it in the context of the entire jury charge, the state of the evidence, argument of counsel, and any other relevant information contained in the record. *Almanza,* 686 S.W.2d at 171, 174; *see also Turner,* 721 S.W.2d at 913.

The court charged the jury under Tex. Code Crim.P.Ann. art. 38.23 (Vernon Supp. 1994) that illegally obtained evidence was not admissible:

> You are instructed that no evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

The court then charged the jury on the law of temporary investigative detention:

> An officer is permitted, to make a temporary investigative detention of a motorist if the officer has a reasonable suspicion that some activity out of the ordinary has occurred, that the person detained is connected with such activity, and that there is some indication that the activity is related to crime or a criminal offense.

Appellant assigns error in the application section of the jury charge:

Now bearing in mind these instructions [sic], if you find from the evidence that on the occasion in question the driver and front seat passenger *were **not** wearing seat belts* immediately preceding the stop and detention by the police officer, or you have a reasonable doubt thereof, *then such stopping of the accused would be illegal,* and if you find the facts so to be, or if you have a reasonable doubt thereof, you will disregard the testimony of the officer relative to his stopping the defendant and his conclusions drawn as a result thereof and you will not consider such evidence for any purpose whatsoever.

(Emphasis added.)

■ Appellant accurately points out that the court misstated the law. The police could lawfully detain if appellant were not wearing a seatbelt, and the police could not lawfully detain if appellant were wearing a seatbelt. The statement that a detention was illegal if appellant were not wearing a seatbelt is unquestionably wrong. *Jones v. State,* 458 S.W.2d 654, 656 (Tex.Crim.App. 1970).

We now examine whether the error was fundamental such that appellant was denied a fair and impartial trial. In so doing, we follow the dictates of *Bailey v. State,* 867 S.W.2d 42, 43 (Tex.Crim.App.1993) in which the Court of Criminal Appeals vacated a judgment of this Court and remanded for a review of unobjected to charge error under the *Almanza* standard.

■ The State argues that reviewed in the context of the entire jury charge, the state of the evidence, the argument of counsel, and all other relevant information in the record, the error does not rise to the level of egregious harm under *Almanza.* We agree. It is evident from the record that all parties clearly understood both the fact issue before the jury and the applicable law of temporary investigative detention, which the trial court correctly stated in an earlier paragraph of the charge.

### The Evidence

The prosecution presented evidence that neither the driver of appellant's automobile nor appellant (the front seat passenger) was wearing a seat belt and that the officers stopped the automobile based on this violation. Appellant and the driver testified that because they were both wearing seat belts, the automobile should not have been stopped. For the jury to have been confused on the law would have required it to have ignored both sides' unequivocal evidence.

### The Charge

In conducting our "egregious harm" analysis, we must view the charge as a whole and must not limit our review to parts of the charge standing alone. *Reyes v. State,* 741 S.W.2d 414, 425–26 (Tex.Crim.App.1987). In a paragraph preceding the incorrect instruction, the charge correctly instructed that no evidence obtained in violation of federal or state law was admissible in the case before them.

You are instructed that no evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

The jury was then correctly instructed on the law of temporary investigative detention.

An officer is permitted to make a temporary investigative detention of a motorist if the officer has a reasonable suspicion that some activity out of the ordinary has occurred, that the person detained is connected with such activity, and that there is some indication that the activity is related to crime or a criminal offense.

Only after these correct instructions did the error occur when the court applied the law of investigative detention to the facts.

The erroneous instruction was given in the context of a common understanding of the law on the parts of both the State and the defense: that the driver's or front seat passenger's conduct in *not* wearing seat belts would result in a legal stop, while their *wearing* seat belts would result in a *non-*legal, or *illegal,* stop. Nothing in the record indicates that anyone—judge, prosecutor, defense at-

torney, or jury—misunderstood the applicable law.

## Closing arguments

In closing arguments, both the prosecutor and appellant's attorney emphasized their respective positions about whether appellant and the driver of the stopped automobile were wearing seat belts as the oncoming patrol car approached them. Both agreed that the driver's and the front seat passenger's conduct in not wearing seat belts would be the basis of a legal detention. The defense attorney emphasized the unfairness of stopping an automobile for such a trivial violation in this "zero-tolerance" neighborhood, but not in other areas. He even imagined the arresting officers' thought processes:

> They were driving along and *we saw them without seat belts on* and since we're working zero tolerance, *that was enough to go and stop and arrest them.* Fine. So they turned around, came back behind them, pulled them over and stopped them.
>
> . . . .
>
> And he's [Officer Kwiatkowski] our policeman, and he says, I saw this—*I saw them without any seat belts on.* Jessie [the defense witness, the arrestee in the back seat of the patrol car] said he couldn't tell whether they had seat belts on and nobody brought up seat belts to attract it to his attention.

(Emphasis added.)

The prosecutor argued in closing:

Officer Kwiatkowski and Officer Zavala were out in that neighborhood and they saw two people *not wearing seat belts and that is a violation of the law.* That is the reason. That is a reason to stop someone on traffic and that's what they're out there to do, and they did what they've been told to do, and they did—they've did what they've been requested to do.

. . . .

And they did what they were supposed to do that day and there's nothing wrong with what they did. *They saw a violation of the law, and they made a traffic stop.*

. . . .

Those officers told you the way it was, plain and simple on September 2, 1992 in Harris County, Texas. They told you what happened. *They stopped him for no seat belt.* They don't make up all this speeding and high speed chase, they don't do anything like that. *They just tell you the truth, no seat belt.*

. . . .

*Not wearing a seat belt is against the law. It's a violation of the law and that was why they made the traffic stop, for not wearing seat belts.* That's fine. That's what they—they would have done it to any other car that drove by that day. *Not wearing a seat belt, it's a violation of the law.*

(Emphasis added.)

In summary, a review of the charge itself, the state of the evidence, and the arguments of counsel shows that the error caused no egregious harm to appellant. It was clear to the jurors that they were not to consider the evidence seized if they found that appellant and the driver *were* wearing seat belts, or if they had a reasonable doubt about that fact. *See Chubb v. State*, 821 S.W.2d 298, 301–302 (Tex.App.—Corpus Christi 1991, pet. ref'd).

We overrule point of error one.

## Ineffective Assistance of Counsel

In point of error two, appellant contends that trial counsel rendered ineffective assistance when he failed "to object to the court's improper Article 38.23 instruction to the jury charge because the application paragraph is the reverse of what the law requires."

As our standard of review in ineffective assistance of counsel cases, we follow the dictates of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to reverse, we must find: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) but for counsel's unprofessional errors, the results of the proceedings would have been different. *Id.* at 690–94, 104 S.Ct. at 2066–68. The *Strickland* test has been adopted in *Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim.App.1986), as the proper test for determining ineffective assistance of counsel under the Texas Constitution.

■ Measuring the charge against the first prong of the *Strickland* test, we find that trial counsel's performance fell below reasonable representation. The charge clearly contains an erroneous instruction, and its fallacy is of the type that is not equivocal, could easily have been detected by careful proofreading, and should have been objected to.

■ In spite of that determination, however, we do not reverse because we find that the outcome of the proceeding would not have been different even if counsel had properly objected to the erroneous instruction. Our review in the previous section of this opinion details our analysis of the magnitude of this error in the context of the entire case. Based on the evidence the jury heard before it ever saw the charge, it would have concluded that if appellant and the driver had not been wearing a seatbelt, the stop would have been *legal*, not *illegal*. The arguments of counsel unquestionably reinforced this conclusion. The instruction, while erroneous, would not have dictated a different result had it been correct.

We overrule point of error two.

We affirm the judgment of the trial court.

O'CONNOR, Justice, dissenting.

I dissent. The majority affirms the judgment of conviction even though the charge instructed the jury on the opposite of what the law is. The jury charge in this case is not a little off, slightly wrong, ambiguous, or misleading; it is 180 degrees opposite of what it should be. It cannot be harmless error to instruct the jury that the law is the opposite of what it actually is. If we affirm this judgment, we admit that the court's instructions play no role in how the jury reaches its decision on guilt or innocence.

When the defendant does not object to error in the charge, we will reverse only if the error was so egregious that it denied the defendant a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim. App.1985) (op. on reh'g); Tex.Code Crim.P. art. 36.19. The factors we consider in making the decision whether to reverse for charge error are: (1) the charge itself; (2) the state of the evidence, *including contested issues* and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other information contained in the record. *Bailey v. State*, 867 S.W.2d 42, 43 (Tex.Crim.App.1993).

The issue whether the appellant was wearing his seat belt was a hotly contested issue. That issue was submitted to the jury erroneously—instead of telling the jury to find that the stop was illegal if the appellant was wearing his seat belt, the charge told the jury to find the stop was illegal if the appellant was not wearing his seat belt. The jury verdict rendered in this case could reflect that the jury believed the appellant and disbelieved the police officers.

The majority states that nothing in the record indicates that the jury misunderstood the law.[1] The majority was not privy to the jury's deliberations. Nothing in our trial procedure permits a jury to make a record of its understanding of the charge.

I would hold that the erroneous instruction denied the appellant of a fair trial. I would sustain the appellant's point of error one, and reverse for a new trial.

I would also sustain the appellant's point of error two—that his trial counsel did not provide him effective legal assistance when he failed to object to the error in the charge. Trial counsel should have noticed the error and should have objected to it.

---

1. The majority states that nothing in the record indicates the judge, the prosecutor, or the defense lawyer misunderstood the applicable law. Maj. op. at 94. The majority also states that all parties clearly understood the law. Maj. op. at 94. That does not bolster the majority's case that the jury understood the law. Instead of focusing on what the judge, the lawyers, or the parties "clearly" understood, the majority should focus on the instructions to the jury. The jury received the law from the judge, and we presume that it followed the court's instructions. *Rose v. State*, 752 S.W.2d 529, 554 (Tex.Crim.App.1987); *Will v. State*, 794 S.W.2d 948, 951 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). The presumption is rebuttable, but nothing in this record rebuts it. That the judge and the lawyers actually knew what the law is not relevant to whether the jury was misled by the improper instruction.