Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

Nos. 04-11-00501-CR, 04-11-00502-CR, 04-11-00503-CR, 04-11-00504-CR, 04-11-00505-CR,
04-11-00506-CR, 04-11-00507-CR, 04-11-00508-CR, 04-11-00509-CR, & 04-11-00510-CR

Nicanor **CHACON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2009CR2798, 2009CR2799, 2009CR2801, 2009CR2802, 2009CR2803,
2009CR2804, 2009CR2805, 2009CR10184, 2009CR10185, & 2010CR11439
Honorable Juanita A. Vasquez-Gardner, Judge Presiding

Opinion by:   Steven C. Hilbig, Justice

Sitting:      Rebecca Simmons, Justice
              Steven C. Hilbig, Justice
              Marialyn Barnard, Justice

Delivered and Filed:  June 27, 2012

AFFIRMED

Nicanor Chacon entered a plea of no contest to nine charges of aggravated robbery and

one charge of aggravated kidnapping. The trial court sentenced him to ten concurrent forty-year

sentences. Chacon appeals the judgments, asserting the trial court erred by denying his motion

for new trial, failing to hold an evidentiary hearing on the motion, and excluding certain

evidence during the punishment hearing. Chacon also contends his pleas of no contest were involuntary. We affirm the judgments.

## BACKGROUND

Chacon chose to resolve the several charges pending against him by pleading "no contest" to ten felonies. He now contends his pleas were involuntary because he did not understand that his pleas of no contest would result in a finding of guilt. In his motion for new trial, Chacon asserted that he believed "he was having a bench trial in which he could have been found not guilty based upon expert testimony regarding his conduct having occurred in a manic state caused by the improper administration of a prescription drug." In his affidavit[1] attached to the motion, Chacon stated that he thought the judge would be deciding his guilt, and that after signing all the plea documents and hearing the admonishments of the judge, he believed he "was having a trial that could have resulted in a not guilty verdict." Chacon also stated that he did not understand the "meaning of all of the documents that I signed," and that he was "not blaming anyone for this, but I want to withdraw my plea and have the Judge reconsider my case and my sentence."

As part of the plea proceedings, the parties prepared documents entitled "Court's Admonishment and Defendant's Waivers and Affidavit of Admonitions" ("Admonition") and "Waiver, Consent to Stipulation of Testimony and Stipulations" ("Stipulation"). The documents appear to be identical in all ten cases except for the police reports attached to the Stipulations in support of the pleas.[2] Additionally, each Stipulation contains a judicial confession that tracks the

---

[1] Chacon's mother also filed an affidavit in support of the motion for new trial. In her affidavit, Ms. Chacon asserts that she believed she had the "same understanding of this situation and process as my son, what his rights were and what he was going to do in court." However, Ms. Chacon did not explain the basis for her belief nor did she state she was present when Chacon's attorney explained the plea documents to her son.

[2] *See* TEXAS CODE CRIM. PROC. ANN. art. 1.15 (West 2005) (requiring State to introduce evidence "showing the guilt of the defendant" to support plea of guilty).

language of the indictment for that cause number. Chacon signed each Stipulation and swore that he had read or had read to him the contents of the Stipulation, that the recitations of fact were true and correct, and that he understood each document. In each Admonition Chacon entered a plea of "nolo contendere" to the charge and swore that he had his "Constitutional and legal rights explained to me by my attorney." These rights included the rights to a jury trial, to confront and cross-examine the witnesses, to remain silent, and to a formal arraignment. Chacon also swore that he was entering a plea of nolo contendere because "I have considered all aspects of my legal situation and discussed them with my attorney and have determined that the entry of such plea is in my own best interest." Chacon's trial attorney signed the Admonition, indicating that he had "explained the law regarding all waivers set forth in this document" and that Chacon "voluntarily relinquished a known right." The trial court also signed each Admonition, stating that Chacon's "waivers have been entered voluntarily, in full knowledge of his rights; that the admonishments of the Court have been understood by the Defendant."

During the formal plea proceedings, the trial judge orally admonished Chacon as to his rights, and Chacon answered in the affirmative when the judge asked him if he knew he was giving up the rights contained in the documents. After accepting the pleas, the trial court told Chacon that a presentence report would be prepared.

The court subsequently held a punishment hearing that extended over several days. The witnesses included several of the victims and several witnesses who testified on Chacon's behalf, including Dr. Raul Pelaez and Dr. Roberto Jimenez. At the conclusion of the punishment hearing, the court imposed its sentence.[3] Chacon retained new counsel and timely filed his motion for new trial. The trial court denied the motion for new trial without a formal hearing.

---

[3] The trial court later granted Chacon permission to appeal.

**INVOLUNTARY PLEA**

Chacon argues the judgments should be reversed because the record establishes his pleas were "involuntary and unknowing," the trial court should have granted his motion for new trial, and the court should have held a hearing on the motion.

The purpose of a hearing on a motion for new trial is to decide whether the case should be retried and to prepare a record for presenting issues on appeal if the motion is denied. *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). There is no absolute right to a hearing on a motion for new trial, but a trial court abuses its discretion in failing to hold a hearing when a defendant presents a motion raising matters "not determinable from the record" that present reasonable grounds for relief. *Id.* at 338-39; *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). A trial court may consider trial testimony and affidavits when deciding the merits of a motion for new trial. *Smith*, 286 S.W.3d at 338-39; *Turner v. State*, 721 S.W.2d 909, 911 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd). We review a trial court's denial of an evidentiary hearing on a motion for new trial and the court's decision on the merits of the motion for abuse of discretion. *Smith*, 286 S.W.3d at 339 (merits); (*Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003) (denial of hearing). Reversal is warranted only if the trial court's decision was so clearly wrong as to lie outside the zone of reasonable disagreement. *Smith*, 286 S.W.3d at 339.

Chacon argues that the issue of whether his pleas were voluntary was not determinable from the record and thus a hearing was required. We disagree. The trial court heard sworn testimony from Chacon at the plea hearing that he understood the effects of his waivers and had discussed his pleas with his trial counsel. His sworn written Stipulations contained a judicial confession. And Chacon swore in each of his written Admonitions that his attorney explained

his legal and constitutional rights to him. These facts are in contrast to the statements in Chacon's affidavit that he did not understand the nature of his plea. At trial, he stated he understood the proceedings, and in his affidavit he stated the opposite. As the fact-finder, the trial court was free to determine Chacon's later affidavit was not credible. A hearing was not required because no further explanation from Chacon was necessary. *See Bryant v. State*, 974 S.W.2d 395, 400 (Tex. App.—San Antonio 1998, pet. ref'd) (holding trial court not required to conduct hearing on motion for new trial because claim of ineffective assistance of counsel for failure to fully explain plea bargain was determinable from record).

Chacon next argues the record establishes his pleas were involuntary and unknowing because he believed the trial court could find him not guilty despite his plea and could send him to a hospital for treatment. Before accepting a plea of guilty or nolo contendere, the trial court must administer certain admonishments. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a) (West Supp. 2011). The court may not accept the plea unless it appears to the court the plea is made freely and voluntarily. *Id.* at art. 26.13(b). We review the voluntariness of a plea by looking at the totality of the circumstances. *Griffin v. State*, 703 S.W.2d 193, 196 (Tex. Crim. App. 1986). "A finding that a defendant was duly admonished creates a prima facie showing that a guilty plea was entered knowingly and voluntarily." *Martinez v. State*, 981 S.W.3d 195, 197 (Tex. Crim. App. 1998); *see Fuentes v. State*, 688 S.W.2d 542, 544 (Tex. Crim. App. 1985). The burden then shifts to the defendant to overcome the prima facie determination with proof his plea was involuntary. *Fuentes*, 688 S.W.2d at 544.

The trial court's oral and written admonishments of Chacon substantially complied with the requirements of article 26.13. Chacon's only attack on the admonishments is that he was not told his plea of nolo contendere would result in a finding of guilt. However, such an

admonishment is not required under article 26.13. The admonishments therefore establish, prima facie, that Chacon's pleas were voluntary. In addition, Chacon signed the Admonishments and Stipulations, indicating he was waiving his right to a jury trial, his right to confront and cross-examine witnesses, and his privilege against self-incrimination. Chacon stipulated that the police reports and other documents attached to the Stipulation, which stated Chacon committed the crimes at issue, were true and correct, and he judicially confessed to each offense. Chacon testified that he was pleading because he had discussed the pleas with his trial attorney and he thought it was the "best thing" for him to do. His trial attorney orally stated that he believed Chacon had a "factual and rational understanding of the charge [sic] and proceedings." His trial attorney also certified as part of the Stipulations that he explained to Chacon his constitutional rights and that Chacon "fully understands" those rights and waived them after "due deliberation" and "intelligently and voluntarily" waived those rights.

Chacon relies on his and his mother's affidavits to sustain his burden to overcome the prima facie showing of voluntariness and the evidence of voluntariness in the record. Chacon stated in his affidavit that he did not know he "entered into any kind of plea bargain,"[4] he did not understand his plea of nolo contendere had the same legal effect as a guilty plea, and he did not "understand the meaning of all the documents that I signed." Chacon's mother testified by affidavit that, based on the information she received from Chacon's lawyer "at trial," she thought the lawyer was "fighting the case" and her son could be found not guilty after the judge heard the evidence. She also believed that the plea of "no contest was like a plea of not guilty, different

---

[4] The Admonishments contain a page entitled "Plea Bargain" that indicates there was no agreement as to the term of imprisonment, the parties agreed there would be an affirmative finding of Chacon's use of a deadly weapon, Chacon would not make any application for deferred adjudication, each sentence would be served concurrently with the other nine sentences, and two felony charges and two misdemeanor charges would be taken into consideration as a result of the plea. Chacon signed the document beneath the statement that "Defendant and Counsel request the Court to follow the plea bargain."

only in that he was not claiming that he was completely innocent, but was not guilty because of the special circumstances" — that Chacon was taking Prozac. Finally Ms. Chacon stated that based on discussions with Chacon "during this whole process," she believed Chacon had the same understanding as she did.

We hold this evidence is insufficient to overcome the prima facie showing that Chacon's plea was voluntary. Chacon's mother's affidavit is conclusory because it does not elaborate on any discussion with her son or her son's trial attorney that would have led her to conclude Chacon did not understand the nature of his plea. *See Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994). Furthermore, she does not assert she was present when the trial attorney reviewed the Stipulations and Admonishments with Chacon. Chacon's affidavit is also insufficient to meet his burden. Although he asserts he did not understand the plea papers and the effect of his plea, he does not deny receiving them, reviewing them, and having them explained to him. He does not assert his trial counsel failed to explain his constitutional and procedural rights or the nature and effect of his plea to him before entering his plea. Nor does he assert his counsel or the trial court gave him inaccurate information about the nature and consequences of his plea. He simply contends that he did not understand the "meaning" of his plea papers, but also states he is not "blaming" anyone for "this." Chacon's affidavit does not directly contradict his statements and those of his attorney during the plea proceedings that his rights were explained to him. Chacon has failed to meet his burden. We hold the trial court did not err in denying the motion for new trial on the issue of voluntariness and we overrule Chacon's point of error concerning the voluntariness of his plea.

## EXCLUSION OF MITIGATING EVIDENCE

Chacon next argues he "was not allowed to present mitigating evidence which may have resulted in a lesser sentence." In his motion for new trial, Chacon complained the trial court improperly sustained the State's objection to his expert's testimony that Chacon was in a "manic state induced through the improper prescribing of medication," and was attempting "to surrender by showing his empty hands with arms outstretched" when he was shot by police. Chacon argues the court should have held a hearing on this issue. We again disagree. The validity of a trial court's evidentiary ruling is determined by examining the record as it appeared at the time of the ruling, and is not affected by arguments or evidence elicited during a hearing on a motion for new trial. *Hoyos v. State*, 982 S.W.2d 419, 422 (Tex. Crim. App. 1998). Likewise, appellate review of a trial court's evidentiary ruling is based on the state of the record at the time of the ruling. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). Because this issue in the motion for new trial was determinable from the record and Chacon does not point to any additional facts outside the record that could properly be considered by this court on appeal, the trial court did not abuse its discretion in failing to conduct a hearing.

On appeal, Chacon argues the trial court erred by not admitting evidence during the punishment hearing that he was surrendering with his arms raised and an open, empty palm when he was shot by police,[5] and that the court erred by denying his motion for new trial on that ground. We review a trial court's decision to admit or reject evidence under an abuse of discretion standard. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

Chacon's expert radiologist, Dr. Raul Pelaez, testified about the injuries Chacon sustained as a result of the gunshots, as revealed by the medical records Dr. Pelaez reviewed.

---

[5] Chacon also complains in his brief the trial court erred by excluding his expert's testimony about the nature of a second gunshot wound to his neck. However, the doctor testified in some detail as to the damage caused to Chacon by that wound, and Chacon fails to point to any place in the record where such testimony was excluded.

Dr. Pelaez then began to testify about his "conception" of how he "saw the injury initiated," and started to describe the position of Chacon's arms. The State objected, and without obtaining a ruling from the court, Chacon's attorney instructed the witness to testify about the trajectory of the bullet or bullets and not to state his opinion as to the physical position of Chacon's arms. Nevertheless, the witness soon returned to the issue and started to testify that when Chacon was first shot, his right arm was raised. The State objected that Dr. Pelaez's opinion about Chacon's physical position was based on speculation and requested a "Rule 705" hearing.[6] In response, Chacon stated that "we're just trying to get to the Court information regarding the extent of the damage." The court sustained the objection. Chacon then asked the witness, "In your opinion, how was his arm situated based upon the entrance and exit of the bullet." Dr. Pelaez responded, "The arm was raise, the right thumb was raise because the inner aspect of the –." The State objected again, and the court allowed the State to conduct its *voir dire*. During the *voir dire*, Dr. Pelaez stated he was basing his opinion about the position of Chacon's arms on the medical records and an eyewitness report, although he could not remember the name of the witness and did not have the report with him. After further questioning by the State, Chacon interrupted the *voir dire* and instructed the doctor to base his testimony only on the medical records. Chacon continued his direct examination, but when the doctor again began to testify about the position of Chacon's arm, the State objected. Without ruling on the objection, the court requested Chacon to rephrase the question. Chacon rephrased the question as follows:

> Q. If you could please tell the Court exactly where the bullet entered the arm. And do not mention that the arm was raised, but simply point to where the bullet entered the arm, please.

---

[6] "Prior to the expert giving the expert's opinion or disclosing the underlying facts or data, a party against whom the opinion is offered upon request in a criminal case shall . . . be permitted to conduct a *voir dire* examination directed to the underlying facts or data upon which the opinion is based." TEX. R. EVID. 705 (b).

Chacon never returned to the subject of the physical position of Chacon's arms. He never asked the court to reconsider its ruling on the "speculation" objection after the State conducted the *voir dire* and he did not seek further clarification from the witness as to the basis for his opinion that Chacon was shot while his arms were raised.

To preserve a complaint for appellate review, the record must show "(1) the complaint was made to the trial court by a request, objection, or motion that was timely and sufficiently specific to make the trial court aware of the grounds of complaint, and (2) the trial court ruled adversely (or refused to rule, despite objection)." *Tucker v. State*, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999); *see* TEX. R. APP P. 33.1. When the error involves evidence that was improperly excluded, the proponent of the evidence must make an offer of proof that sets forth the substance of the excluded evidence. TEX. R. EVID. 103; *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009). A concise statement of the evidence by counsel will suffice, but the proffer "must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent." *Id*. at 890 (*quoting Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998)). The proponent of evidence must clearly articulate the purpose for which the evidence is sought and why it is admissible. *See Reyna v. State*, 168 S.W.3d 173, 177-78 (Tex. Crim. App. 2005). The complaint made on appeal must comport with the complaint made or issue raised in the trial court. *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). The proponent cannot raise on appeal a rationale for admissibility that he never provided the trial judge the opportunity to rule upon. *Reyna*, 168 S.W.3d at 178.

Here, Chacon contends on appeal that the position of his arms constitutes mitigating evidence because it demonstrates he was attempting to surrender. However, in the trial court, Chacon the stated purpose of the evidence was to show "the extent of the damage." Although

the trial court sustained the State's objection to "speculation," this objection went to the basis of the doctor's opinion.  The State was in the process of its *voir dire* to test the basis of the doctor's opinion when Chacon interrupted and then instructed the witness not to mention the position of the arms.  Chacon did not attempt to elicit Dr. Pelaez's opinion about the position of Chacon's arms and hands after he provided the basis for the opinion in *voir dire*.  Chacon did not proffer to the court that he intended the evidence to demonstrate he was surrendering to the police when he was shot or why the evidence was admissible.  And Chacon does not address on appeal the trial court's ruling on the speculation objection — the only evidentiary ruling the trial court made with respect to this evidence.  We hold the trial court did not abuse its discretion in denying the motion for new trial and Chacon failed to preserve the error he complains of on appeal.

## ERRONEOUS PUNISHMENT EVIDENCE

In his final issue, Chacon contends the trial court abused its discretion by denying his motion for a new punishment trial because his sentence was based on "erroneous medical expert opinion testimony," and abused its discretion by denying him a hearing on the motion.

The complaint in the motion for new trial was based on the testimony of Chacon's expert psychiatrist, Dr. Roberto Jimenez.  Dr. Jimenez testified that Chacon's childhood head injuries caused atrophy of his frontal lobe, which in turn resulted in bipolar disorder. He testified the frontal lobe atrophy could not be corrected and recommended extensive, lifelong psychiatric care, and that Chacon be in a stable, structured, confined setting for an extended period of time.

To support his contention that Dr. Jimenez's testimony was "erroneous," Chacon attached the affidavit of Dr. Michael Arambula to his motion for new trial.  Dr. Arambula disputed any connection between Chacon's frontal lobe atrophy and his bipolar disorder.  Dr. Arambula asserted that Chacon's "manic" behavior was caused by improper medication and was

transient in nature. Dr. Arambula testified that Chacon's behavior could be managed with proper medication, and long-term confinement was unnecessary. Dr. Arambula concluded that Dr. Jimenez's erroneous testimony may have led the trial court "to believe the long-term confinement of Mr. Chacon was necessary to the safety of the community and in the management of his mental illness."

The gist of this ground in Chacon's motion for new trial was that his own expert, Dr. Jimenez, expressed a medical opinion which Chacon later decided was wrong. If there was any error, it was of Chacon's own making. "[A] party cannot take advantage of an error that it invited or caused." *Woodall v. State*, 336 S.W.3d 634, 644 (Tex. Crim. App. 2011). Chacon complains of "erroneous evidence" that he introduced from his own expert. The invited error doctrine estops Chacon from complaining about any perceived error concerning admission of this evidence in a motion for new trial or on appeal. *See Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) ("Just as the law of entrapment estops the State from making an offense of conduct that it induced, the law of invited error estops a party from making an appellate error of an action it induced.").

We note that on appeal, Chacon recharacterizes this ground of his motion for new trial as one asserting "newly discovered evidence." Chacon did not present any argument about newly discovered evidence to the trial court in his motion for new trial. Consequently, the trial court did not abuse its discretion in denying a motion based on newly discovered evidence. Moreover, neither the motion for new trial nor Chacon's appellate brief point to any facts demonstrating that the opinion expressed in Dr. Arambula's affidavit was unavailable to Chacon at the time of trial or that Chacon's failure to timely procure Dr. Arambula's testimony was not the result of

lack of diligence. *See Keeter v. State*, 74 S.W.3d 31, 36-37 (Tex. Crim. App. 2002) (setting forth requirements for granting motion for new trial on basis of newly discovered evidence).

We conclude the trial court did not abuse of discretion in denying the motion for new trial based on the purported "erroneous medical expert opinion testimony." We further hold the trial court easily could have determined from the record that the error complained of was invited and that Chacon had not alleged facts that would reasonably support a grant of relief on the ground of "erroneous testimony" or newly discovered evidence. The trial court therefore did not err by failing to hold a hearing on the motion for new trial.

## CONCLUSION

We affirm the trial court's judgments.

Steven C. Hilbig, Justice

DO NOT PUBLISH